UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KRISHNA UJAGAR,

                                NO. CIV. S-05-674 LKK/DAD

       Plaintiff,

   v.                               O R D E R

CAMPBELL'S SOUP COMPANY,

       Defendant.
_____/

    Plaintiff Krishna Ujagar has brought suit against her former employer, defendant Campbell's Soup Company, alleging disability discrimination.  Plaintiff brings claims under California law for (1) disability discrimination, (2) wrongful termination in violation of public policy, (3) failure to take reasonable steps to prevent discrimination, (4) failure to engage in the interactive process, and (5) failure to make reasonable accommodations. Pending before the court is the defendant's motion for summary judgment.  The court resolves the matter based on the parties' papers and after oral argument.  For the reasons set forth below, the motion is denied.

1

# I. Facts[1]

## A. Plaintiff's Employment

Krishna Ujagar ("plaintiff") began her employment with Campbell's Soup Company ("defendant") in 1988. Dep. of Krishna Ujagar ("Ujagar Dep.") at 21:10-12. She was originally hired for the position of "Sorter." Id. at 21:13-14, 25:12-19. At the time of her termination, and for a number of years beforehand, plaintiff held the positions of Statistical Quality Control ("SQC") and Filler Operator. Id. at 27:1-13. Plaintiff's employment was terminated by letter dated October 28, 2003. Dep. of Lillian Dyste ("Dyste Dep.") at 33:10-17.

The SQC position requires an employee to "randomly select five cans of soup off the line and test[] the cans' contents for weight, steam integrity, and taste." Decl. of Brent Littlejohn ("Littlejohn Decl.") ¶ 3. The Filler Operator position requires an employee to "manually feed[] sleeves of can lids into an automated can closer." Id. ¶ 4. Physical demands associated with this position include walking, climbing, and lifting of 10-15 pounds. Id. Plaintiff's work shift was during nighttime hours, and during that particular shift, employees were also required to perform cleaning duties. Littlejohn Decl. ¶ 5. Physical demands associated with these cleaning duties include bending, stooping, and lifting of 15-20 pounds. Id.

Plaintiff was represented by the Food Process Workers Union,

---

[1] Undisputed unless otherwise noted.

2

Teamsters Local 228 ("Teamsters"). Def.'s SUF ¶ 1. The terms of her employment with defendant were governed by the contractual terms of the Collective Bargaining Agreement ("CBA") between Teamsters and defendant. Id. The CBA provides that an employee with more than one year of acquired seniority may take up to a one year medical leave of absence. Def.'s SUF ¶ 2. The CBA also provides that this leave of absence "will not be granted for a period longer than one year." Id.

**B. Plaintiff's Leave of Absence**

On October 14, 2002, plaintiff complained of leg pain and went on medical leave for non-work related medical reasons. Plaintiff submitted a series of subsequent doctor's notes indicating that she was unable to work between October 14, 2002 and March 21, 2003. Decl. of Lisa Ryan ("Ryan Decl."), Ex. 11. On March 24, 2003, defendant's Occupational Health Department released plaintiff to work with the restriction that she was "unable to walk on [her] right leg for prolonged periods." Id. Plaintiff was unable to return to work at that time, because there were no positions that could accommodate this restriction. Id. Plaintiff remained on medical leave at this time. In July 2003, plaintiff underwent corrective surgery for a herniated disc. Id.

Following her surgery, plaintiff submitted a doctor's note to defendant on September 22, 2003 stating that she would be able to return to work in eight weeks. Def.'s SUF ¶ 4. Plaintiff then submitted a second doctor's note, dated October 8, 2003, indicating that plaintiff would be able to return to work on October 13, 2003.

3

Def.'s SUF ¶ 5.  The October 8, 2003 note also indicated that plaintiff would be subject to "modified duty," with no repetitive bending or stooping and restricted lifting.  Id.

The lifting restriction stated "No Lifting 0-25 lbs."  Id. The parties differ in their interpretations of this lifting restriction.  Plaintiff believes that this restriction meant that she could lift any amount up to 25 pounds.  Pl.'s Reply at 2:27-28. Defendant, however, interpreted this restriction as essentially prohibiting any lifting.  Def.'s Mot. for Summ. J. at 5:4-6.  This issue arose earlier with respect to a different employee who had seen the same doctor.  Decl. of Sal Hernandez ¶ 3.  After clarification, it was determined that the doctor had intended plaintiff's interpretation of the restriction.  Id. ¶¶ 4, 7.

On October 9, 2003, plaintiff and a nurse with defendant's Occupational Health Department each signed a "work status form" indicating the work restrictions, as defendant construed them, that were detailed in the October 8, 2003 doctor's note.  Def.'s SUF ¶ 6.  At this time, defendant maintains that there were no positions available that, based upon these restrictions, plaintiff would have been able to perform.  Def.'s SUF ¶ 16.  Based upon plaintiff's reading of the lifting restriction, there were five positions that plaintiff could have performed.  Pl.'s Resp. to Def.'s SUF ¶ 22-A. There is no evidence these five positions were either vacant or filled at this time.  Def.'s SUF ¶ 19.

On October 13, 2003, plaintiff spoke with Christine Dinnie, from defendant's Occupational Health Department, about returning

4

1  to work.  Def.'s SUF ¶ 13.  Plaintiff was informed that the matter
2  was still being evaluated.  Id.  On October 14, 2003, plaintiff
3  spoke again with Dinnie and was informed that her paperwork had
4  been given to the Human Resources Department.  Ujagar Dep. 163:13-
5  22.
6      Subsequently, plaintiff submitted another note from her doctor
7  to defendant on October 22, 2003.  Def.'s SUF ¶ 8.  This note again
8  indicated that plaintiff was prohibited from repetitive bending or
9  stooping, but her lifting restriction was now "may lift 5-10 lbs."
10 Id.  Finally, plaintiff submitted another doctor's note on November
11 3, 2003 stating that she was able to return to work with no
12 restrictions.  Ujagar Dep. at 180:11-181:17.

13 **C. Termination Grievance Proceedings**

14     On October 24, 2003, plaintiff spoke with Lillian Dyste from
15 defendant's Human Resources Department, where her paperwork had
16 been transferred, and was informed that she would be terminated
17 because her leave of absence had exceeded a year.  Def.'s SUF ¶ 26.
18 Dyste did not send notice of termination at that time in order "to
19 allow plaintiff an opportunity to discuss the matter with Human
20 Resources Director Timothy Samuel."  Id.
21     A meeting was scheduled by her Teamsters representative
22 between the representative, plaintiff, and Samuel.  Def.'s SUF ¶
23 27.  At the meeting, Samuel and the Teamsters representative were
24 present, but plaintiff was not.  Def.'s SUF ¶ 28.  Plaintiff claims
25 she was unaware of this meeting.  Ujagar Decl. ¶ 9.  A letter
26 confirming her termination was sent to plaintiff the next day.

1  Dyste Dep. at 32:19-33:9.

2      Plaintiff then filed a grievance, asking to be reinstated, on
3  October 30, 2003.  Decl. of Jack Vetter ("Vetter Decl."), Ex. B-12.
4  This grievance was denied on the ground that plaintiff had violated
5  the CBA by taking a leave of absence in excess of one year.  Id.
6  Teamsters did not proceed further or seek arbitration of the
7  matter.  Def.'s SUF ¶ 11.

## II. Standard

9      Summary judgment is appropriate when it is demonstrated that
10 there exists no genuine issue as to any material fact, and that the
11 moving party is entitled to judgment as a matter of law.  Fed. R.
12 Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144,
13 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir.
14 1995).

15     Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

20 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the
21 nonmoving party will bear the burden of proof at trial on a
22 dispositive issue, a summary judgment motion may properly be made
23 in reliance solely on the 'pleadings, depositions, answers to
24 interrogatories, and admissions on file.'"  Id.  Indeed, summary
25 judgment should be entered, after adequate time for discovery and
26 upon motion, against a party who fails to make a showing sufficient

6

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; see also First Nat'l Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir. 1998). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Ass'n of

1  Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)
2  (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
3  809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is
4  genuine, i.e., the evidence is such that a reasonable jury could
5  return a verdict for the nonmoving party, Anderson, 477 U.S. 248-
6  49; see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200
7  F.3d 1223, 1228 (9th Cir. 1999).

8       In the endeavor to establish the existence of a factual
9  dispute, the opposing party need not establish a material issue of
10 fact conclusively in its favor.  It is sufficient that "the claimed
11 factual dispute be shown to require a jury or judge to resolve the
12 parties' differing versions of the truth at trial."  First Nat'l
13 Bank, 391 U.S. at 290; see also T.W. Elec. Serv., 809 F.2d at 631.
14 Thus, the "purpose of summary judgment is to 'pierce the pleadings
15 and to assess the proof in order to see whether there is a genuine
16 need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.
17 Civ. P. 56(e) advisory committee's note on 1963 amendments); see
18 also Int'l Union of Bricklayers & Allied Craftsman Local Union No.
19 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

20      In resolving the summary judgment motion, the court examines
21 the pleadings, depositions, answers to interrogatories, and
22 admissions on file, together with the affidavits, if any.  Rule
23 56(c); see also In re Citric Acid Litigation, 191 F.3d 1090, 1093
24 (9th Cir. 1999).  The evidence of the opposing party is to be
25 believed, see Anderson, 477 U.S. at 255, and all reasonable
26 inferences that may be drawn from the facts placed before the court

8

must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); See also Headwaters Forest Def. v. County of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### III. Analysis

Plaintiff claims that the termination of her employment was a result of disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA") and in violation of public policy. Plaintiff additionally claims that defendant violated FEHA by failing to take reasonable steps to prevent disability discrimination, failing to engage in the interactive process, and failing to make reasonable accommodations for her disability. Defendant moves for summary judgment as to all claims. For the reasons explained below, defendant's motion is denied.

**A. Disability Discrimination**

Plaintiff first claims that termination of her employment constituted disability discrimination in violation of FEHA, Cal. Gov. Code § 12940(a). In analyzing discrimination claims brought under FEHA, California courts utilize the three-stage burden shifting test articulated by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 354 (2000); Diaz v. Federal Express Corp., 373 F. Supp. 2d 1034, 1063 (C.D. Cal. 2005). Under this test, the plaintiff must initially state a prima facie case of discrimination. Id. Here, plaintiff must show that she: (1) suffered from a disability or was regarded as disabled; (2) was otherwise qualified to do the job;[2] and (3) suffered an adverse employment action because of her disability. Diaz, 373 F. Supp. 2d at 1063. Upon establishing a prima facie case, the burden shifts to the defendant to present a legitimate and non-discriminatory reason for the adverse employment decision. Guz,

---

[2] California law is unclear as to whether the plaintiff must also initially show that she was able to perform the essential duties of her position, with or without reasonable accommodations, or whether the defendant must prove as an affirmative defense that plaintiff was unable to perform these duties. Compare Brundage v. Hahn, 57 Cal. App. 4th 228, 236 (2d Dist. 1997) (plaintiff must show, as part of their prima facie case, that she was a "qualified individual") with Bagatti v. Dept. of Rehabilitation, 97 Cal. App. 4th 344, 360 (3d Dist. 2002) (plaintiff alleging failure to make reasonable accommodations was not required to show that she was a "qualified individual"). The question of whether FEHA differs from the ADA, in making the plaintiff's qualification an affirmative defense rather than part of the prima facie case, is currently pending before the California Supreme Court. Green v. State of California, review granted, November 16, 2005, S137770.

24 Cal. 4th at 355-56. Plaintiff then bears the final burden of proving that defendant's proffered reason for the adverse employment decision was pretextual. Id.

Defendant argues that (1) plaintiff was not actually disabled and that (2) the reason for her termination was the violation of the CBA provision limiting the duration of leaves of absence. The court first considers whether plaintiff was actually disabled at the time of her termination. Physical disability includes any physiological condition that "(A) Affects one or more of the following body systems: neurological . . . musculoskeletal . . . and (B) Limits a major life activity." Cal. Gov. Code § 12926(k). At the time of her termination, plaintiff had back problems sufficiently severe that her doctor gave her instructions prohibiting her from repetitive bending and stooping and imposing a lifting restriction of 5-10 pounds. Def.'s SUF ¶ 8. Plaintiff also made representations of her disability upon inquiry by the California Employment Development Department. Ujagar Dep. at 271:20-272:7, Ryan Decl., Ex. 1.

Defendant cites Gelfo v. Lockheed Martin Corp., 140 Cal. App. 4th 34 (2d Dist. 2006) in support of the argument that plaintiff was not disabled at the time of her termination. Def.'s Mot. for Summ. J. at 11:5-12:14. In Gelfo, the plaintiff, who had suffered a back injury and then been denied employment by defendant, alleged disability discrimination under FEHA. At the time the alleged disability discrimination occurred, the plaintiff in Gelfo was not only performing job duties identical to those he sought, without

11

1 accommodations, but was engaging in strenuous physical activities
2 inconsistent with his claims of disability. <u>Gelfo</u>, 140 Cal. App.
3 4th at 47.  Additionally, at the time his employment was still
4 uncertain, plaintiff made statements to his worker's compensation
5 claims handler and to his orthopedic surgeon indicating he did not
6 have any physical limitations.  <u>Id</u>.  Based upon plaintiff's own
7 "clear, unequivocal, uncontroverted testimony," the court
8 determined that he was not actually disabled. <u>Id</u>. at 48.

9      The <u>Gelfo</u> court's determination is not persuasive in the case
10 at bar with respect to plaintiff's disability.  Defendant cites
11 plaintiff's deposition testimony stating that she believed she
12 could have performed her job duties, as evidence that plaintiff was
13 not, in fact, disabled.  Def.'s SUF ¶ 12.  Unlike <u>Gelfo</u>, here,
14 there is no evidence that plaintiff was engaging in any conduct
15 inconsistent with the medical restrictions set forth by her doctor.
16 Plaintiff's deposition testimony simply does not approach the
17 extreme nature of the plaintiff's statements and actions in <u>Gelfo</u>.

18      Furthermore, if "an employer cannot slavishly defer to a
19 physician's opinion without first pausing to assess the objective
20 reasonableness of the physician's conclusions," <u>Gelfo</u>, 140 Cal.
21 App. 4th at 50 (internal quotation marks omitted), then, a
22 fortiori, an employer also cannot unthinkingly defer to an
23 employee's opinion either, even as to her own condition.  After
24 all, plaintiff is not a physician.  Moreover, her comments were
25 made retrospectively (increasing the risk of error), whereas the
26 plaintiff in <u>Gelfo</u> made contemporaneous representations as to his

12

condition.  At the very least, there is a genuine dispute as to whether plaintiff was actually disabled.[3]

The court next turns to the issue of the one-year leave of absence provision in the CBA.  Defendant claims that plaintiff violated the CBA when she remained on medical leave in excess of one year, and that plaintiff's termination was solely due to this violation of the labor contract.  Def.'s Mot. for Summ. J. at 10:18-20.  Plaintiff responds that defendant prevented her from returning to work within the required time frame by misconstruing her work restrictions and then failing to timely accommodate them.  Pl.'s Reply at 12-16.  Because there is a genuine dispute as to whether defendant's reliance on the CBA as the reason for plaintiff's termination was merely pretextual, summary judgment is inappropriate.

The critical fact is that plaintiff submitted a doctor's note releasing her to return to work before her one-year medical leave had run.  Def.'s SUF ¶ 5.  Although the parties dispute which day, October 8 or October 9, 2003, this notice was received by defendant, they agree that it was in advance of her last day of leave allowed under the CBA.  Def.'s SUF ¶ 5.  Whether or not the delay between plaintiff's notice and defendant's subsequent conduct was intentional or simply reflected defendant's standard operating

---

[3] A plaintiff alleging disability discrimination under FEHA, who is not actually disabled, can also proceed under the theory that he or she was "regarded as" disabled.  Cal. Gov. Code § 12926(k).  Given the court's determination that there is a genuine dispute as to whether plaintiff was actually disabled, the court need not reach this issue.

13

procedure is a question of fact upon which reasonable minds could disagree.

Defendant argues that if it had intentionally delayed processing plaintiff's notice in order to push plaintiff outside the one year time limitation, it would not have taken the steps that it did after October 13, 2003. For instance, defendant points out that it took into account the doctor's note from October 21, 2003. Likewise, defendant also agreed to a meeting with plaintiff's union representative in late October. However, the court must draw all reasonable inferences in favor of the non-moving party, and one could reasonably infer that these actions were simply undertaken to shore up the employment decision that defendant had already made.[4] Accordingly, summary judgment is denied as to the disability claim.

**B. Wrongful Discharge in Violation of Public Policy**

Plaintiff additionally claims that her termination was wrongful and in violation of public policy. Under California law, an employer may be held liable for wrongful termination if it discharges an employee in contravention of fundamental public policy. Tameny v. Atlantic Richfield Co., 27 Cal. 3d 167, 177 (1980); Green v. Ralee Engineering Co., 19 Cal. 4th 66 (1998). To state a prima facie wrongful discharge claim, a plaintiff must establish: (1) an employer-employee relationship; (2) that

---

[4] The court wishes to be clear. It is certainly not ruling that the defendant's reasons were improper. The court is merely holding that there is another reasonable inference.

14

plaintiff's termination was a violation of public policy; (3) causation; and (4) damages. See Holmes v. General Dynamics Corp., 17 Cal. App. 4th 1418, 1426 n.8 (4th Dist. 1993). FEHA establishes fundamental public policy upon which a common law tort claim for disability discrimination in violation of public policy may be based. City of Moorpark v. Superior Court, 18 Cal. 4th 1143, 1158-59 (1998).

Defendant's motion with respect to this claim is premised solely upon the argument that plaintiff's failure to establish discrimination under FEHA leaves her prima facie wrongful termination claim incomplete. As discussed above, summary judgment is inappropriate as to the discrimination claim. Similarly, summary judgment as to the wrongful termination claim is also inappropriate. Accordingly, defendant's motion for summary judgment as to the wrongful termination in violation of public policy claim is denied.

**C. Failure to Take Reasonable Steps to Prevent Discrimination**

Next, defendant seeks summary judgment as to plaintiff's failure to prevent discrimination claim, brought under Cal. Gov. Code § 12940(k). This section provides that it is unlawful for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov. Code § 12940(k). Plaintiff must establish a claim for discrimination before a failure to prevent discrimination claim can be stated. See Tritchler v. County of Lake, 358 F.3d 1150, 1155 (9th Cir. 2004); Trujillo v. North County Transit Dist., 63 Cal. App. 4th

15

280, 289 (1998) ("[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen") (internal quotation marks omitted).

Defendant argues that because plaintiff's discrimination claim under FEHA fails, her claim of failure to prevent discrimination must fail as well. For the reasons previously discussed, plaintiff's FEHA claim of disability discrimination survives summary judgment. Moreover, there is at least a genuine dispute as to whether defendant engaged in sufficient training regarding disability accommodation. Accordingly, defendant's summary judgment motion as to the failure to prevent discrimination claim is denied.

**D. Failure to Engage in the Interactive Process**

Plaintiff claims that defendant's failure to engage in the interactive process constitutes a violation of Cal. Gov. Code § 12940(n), which makes it unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Defendant argues that (1) plaintiff cannot establish that there was a vacant position, (2) plaintiff never explicitly requested accommodation, and (3) defendant did, in fact, engage in the interactive process.

First, defendant contends that a plaintiff must establish that

16

there was a vacant position as a prerequisite to bringing an interactive process claim. Pl.'s Mot. for Summ. J. at 17-18. In support of this argument, defendant cites authority from the Seventh Circuit interpreting the ADA. <u>Id.</u>  California's FEHA, however, does not impose such a requirement.  See <u>Claudio v. Regents of the University of California</u>, 134 Cal. App. 4th 224, 248 (3d Dist. 2005) ("[S]ince we conclude a triable issue exists concerning failure by the [defendant] to participate in the interactive process, the judgment cannot be affirmed on the ground that no alternate jobs were available.").

Second, defendant also argues that plaintiff never requested an accommodation.  By the plain wording of the FEHA statute, an employer must engage in a good faith, interactive process "in response to a request for reasonable accommodation by an employee." Cal. Gov. Code § 12940(n).  However, this request need not include any particular "magic words" to trigger an employer's duty to engage in the interactive process.  Prilliman v. United Air Lines, Inc., 53 Cal. App. 4th 935, 954 (2d Dist. 1997).  Given plaintiff's October 8, 2003 doctor's note, which set forth various work restrictions (e.g., no repetitive bending and stooping), it may reasonably be inferred that plaintiff was requesting accommodation. Moreover, it appears that defendant interpreted the note as a request for accommodation, given that it thereafter completed plaintiff's "work status form" and communicated internally as to whether there were positions which could accommodate plaintiff's work restrictions.  Def.'s SUF ¶ 6; Miller Dep. at 96:1-97:23.

17

1    Third, defendant argues that it did, in fact, engage in the
2 interactive process.  Most of the interactions cited by defendant
3 as examples of the interactive process were short and insubstantial
4 conversations with plaintiff regarding her employment status.  The
5 most significant interaction was the meeting, scheduled by the
6 Teamsters representative, that was supposed to take place between
7 the Teamsters representative, plaintiff, and defendant's Human
8 Resources Director Timothy Samuel.  Samuel was present at the
9 meeting, Def.'s SUF ¶ 28, as was the Teamsters representative,
10 Samuel Dep. at 24:7-15, but plaintiff was not, Def.'s SUF ¶ 28.
11    Defendant argues that it was plaintiff who therefore caused
12 a breakdown in the interactive process. Plaintiff states, however,
13 that she was unaware of the meeting, and did not intend to end
14 communications with defendant.  Ujagar Decl. ¶ 9.  Indeed, after
15 the scheduled meeting, plaintiff also initiated additional contact
16 with defendant when she filed a grievance and when she submitted
17 another doctor's note dated November 2, 2003.  Pl.'s Reply, Ex.s
18 B-12-13.  Whether or not plaintiff caused a breakdown in the
19 interactive process, and whether defendant engaged in the
20 interactive process in good faith, are both triable issues of fact.
21 Accordingly, summary judgment as to the interactive process claim
22 is denied.

23 **E. Failure to Make Reasonable Accommodations**

24    Finally, plaintiff claims that defendant failed to make
25 reasonable accommodations for her physical disability in violation
26 of FEHA.  The statute provides that "[i]t shall be an unlawful

employment practice . . . for an employer . . . to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee". Cal. Gov. Code § 12940(m). However, employers are not required to provide accommodations that would "impose an undue hardship." Cal. Code Regs. tit. 2 § 7293.9.

For a defendant employer to prevail on summary judgment for a reasonable accommodation claim, it may establish, inter alia, that (1) "there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation," or (2) "the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." Jensen, 85 Cal. App. 4th at 263.

Neither path is availing in this case. First, because there is a triable issue of fact as to whether defendant engaged in the interactive process, there is a similar question of fact regarding whether an alternate position could have been found for plaintiff. See Claudio, 134 Cal. App. 4th at 245. Defendant's reliance on case law indicating that an employer need not violate its seniority system in order to accommodate an employee, e.g., U.S. Airways v. Barnett, 525 U.S. 391 (2002), does not change this conclusion. There is no indication that plaintiff's restrictions could not have been managed within the seniority system, or that plaintiff lacked

the requisite seniority to obtain appropriate accommodation within the CBA.

Second, a defendant can prevail on summary judgment for a reasonable accommodation claim by establishing that the employee failed, in good faith, to engage in discussions. <u>Jensen</u>, 85 Cal. App. 4th at 263. As discussed above with respect to the interactive process claim, however, a question of fact remains as to whether plaintiff failed to engage in discussions in good faith. Accordingly, defendant's motion for summary judgment on the reasonable accommodations claim is denied.

### IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.

DATED: December 20, 2006.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT